**Gwen LORENC, Plaintiff and Appellant,**

v.

**John Reed CALL, in his official capacity as Superintendent of Schools of the Granite School District; and the Board of Education of Granite School District, Defendants and Respondents.**

No. 890286–CA.

Court of Appeals of Utah.

March 6, 1990.

Bruce M. Plenk, Salt Lake City, for plaintiff and appellant.

M. Byron Fisher, Salt Lake City, for defendants and respondents.

Before BENCH, BILLINGS and GREENWOOD, JJ.

BILLINGS, Judge:

Plaintiff appeals an adverse judgment denying her claims that defendants' former fee waiver policy and procedures violated state law, board of education rules, and the due process clause of the fourteenth amendment of the United States Constitution and article I, section 7 of the Utah Constitution. We reverse and remand.

We note that this opinion is issued in place of our prior opinion in this case, *Lorenc v. Call*, 124 Utah Adv.Rep. 37 (Ct. App.1989), which was vacated on March 6, 1990. As a result of a petition for rehearing in this case, we have concluded that our previous opinion was in error on the issue of plaintiff's right to recover attorney fees under 42 U.S.C.A. § 1988 (1981), and therefore grant the relief requested in plaintiff's petition for rehearing.

## FACTS

At the inception of the 1986–87 school year, plaintiff Gwen Lorenc was a single parent of six minor children, three of whom attended secondary schools in the Granite School District (District). Prior to the commencement of classes, the District advised plaintiff and other parents that fees would be imposed on students for various activities, books, and materials. The District subsequently assessed plaintiff a total of almost $200 in fees for her three secondary school students.

On September 5, 1986, plaintiff contacted the high school principal to request a waiver of fees on the basis of financial hardship. No written rules or regulations were distributed to parents in order to guide plaintiff as to how she might qualify for a fee waiver. She was denied a waiver, and was referred to the District's fee waiver administrator to appeal the decision. The administrator merely met with plaintiff and determined that she was eligible for a "partial waiver" under an unpublished policy providing for "partial waivers." This appeal "hearing" was conducted with no formal notice and without written procedures. Plaintiff appealed the partial waiver of fees decision to the District, requesting a formal hearing. No formal hearing was scheduled, however, until more than six months later, after plaintiff sought a declaratory judgment and preliminary and permanent injunctive relief in Third District Court.

On March 9, 1987, the District conducted a formal hearing in which plaintiff was represented by counsel and was permitted to present evidence and cross-examine witnesses. After the hearing, plaintiff's application for a full waiver was again denied by the District.

Plaintiff's lawsuit proceeded to trial on May 18–19, 1987. After hearing the evidence, the trial court determined that the District's fee policy conformed to state law and the rules promulgated by the Utah State Board of Education (Board) and provided adequate notice and procedural protections to those wishing to seek fee waivers.

## VALIDITY OF DISTRICT POLICY

Plaintiff claims that the District's fee waiver policy is more restrictive than the policy established by the Board's rules, and is thus invalid. The Board's rules provide, in pertinent part:

A board of education shall provide, as part of any fee policy or schedule, for adequate waivers or other provisions to ensure that no student is denied the opportunity to participate in a class or school-sponsored or supported activity because of an inability to pay a fee.

The waiver policy shall include procedures to ensure that:

. . . .

(4) fee waivers or other provisions in lieu of fee waivers are available to all students who are in state custody or receiving public assistance in the form of aid to dependent children, general relief, supplemental security income, or foster care, and others whose parents or guardians are financially unable to pay.

Utah Admin.Code R. 300–407–6(A)(4) (1987–88).

The District's policy in effect during the 1986–87 school year provided, in pertinent part:

Fees, as identified by the Granite School District Board of Education, will be waived in accord with Utah State Board of Education standards for students whose parents or legal guardians are the recipients of public assistance in the form of Aid to Dependent Children, General Relief, Supplemental Security Income, Foster Care, or other benefits provided through the Department of Social Services due to a limited financial ability within the family. (The receipt of unemployment compensation and/or free or reduced price school lunches does not

constitute public assistance as above defined.)

Administrative Memorandum No. 24, July 29, 1986.[1]

Plaintiff asserts that the District's fee waiver policy unduly restricted waivers to recipients of certain welfare program benefits and lacked measures for preventing delay, for reviewing waiver alternatives, and for processing appeals. In comparison, the Board's rules do not limit fee waivers to recipients of public assistance, but provide waivers to "others whose parents or guardians are financially unable to pay."

Plaintiff concedes that the assessment of fees for secondary school students is constitutional. See Utah Const. art. X, § 2.[2] Plaintiff also accepts as valid the statutory provisions enacted in 1986 permitting local school districts to authorize student fees under rules adopted by the Board, and the statutory waiver policy for such fees. See Utah Code Ann. §§ 53A–12–102, –103 (1989).[3] Furthermore, plaintiff does not challenge the rules promulgated by the Board to implement sections 53A–12–102 and –103.

We begin our analysis by reiterating the standard under which we review a trial court's conclusions of law: we accord them "no particular deference, but review them

---

**1.** Though not pertinent to this proceeding, Administrative Memorandum No. 24 was amended September 18, 1989, to make fee waivers available for all students financially unable to pay.

**2.** At times pertinent to this dispute, Utah Const. art. X, § 2 provided:

The common schools shall be free. The other departments of the system shall be supported as provided by law.

"Common schools" has been interpreted to mean grades one through eight. *Logan City School Dist. v. Kowallis*, 94 Utah 342, 349, 77 P.2d 348, 351 (1938). Article X, § 2 was amended, effective July 1, 1987, to read:

Public elementary and secondary schools shall be free, except the Legislature may authorize the imposition of fees in the secondary schools.

**3.** Utah Code Ann. § 53A–12–102 (1989)—State policy on student fees, deposits, or other charges.

(1) A fee, deposit, or other charge may not be made, or any expenditure required of a student or the student's parent or guardian, as

a condition for student participation in an activity, class, or program provided, sponsored, or supported by or through a public school or school district, unless authorized by the local school board under rules adopted by the State Board of Education.

(2) A fee, deposit, charge, or expenditure may not be required for elementary school activities which are part of the regular school day or for materials used during the regular school day.

(Formerly Utah Code Ann. § 53–7a–1 (Supp. 1987) (amendments reflect minor changes in phraseology)).

Utah Code Ann. § 53A–12–103 (1989)—Waiver of fees.

A local school board shall require, as part of an authorization granted under Section 53A–12–102, that adequate waivers or other provisions are available to ensure that no student is denied the opportunity to participate because of an inability to pay the required fee, deposit, or charge.

(Formerly Utah Code Ann. § 53–7a–2 (Supp. 1987) (amendments reflect minor changes in phraseology)).

for correctness." *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985); *Camp v. Office of Recovery Servs.*, 779 P.2d 242, 244 (Utah Ct.App.1989).

Rules may not "abridge, enlarge, extend or modify the statute creating the right or imposing the duty." *Crowther v. Nationwide Mut. Ins. Co.*, 762 P.2d 1119, 1122 (Utah Ct.App.1988) (quoting *IML Freight, Inc. v. Ottosen*, 538 P.2d 296, 297 (Utah 1975)). A policy becomes a rule if "it conforms to the definition of a rule." Utah Code Ann. § 63–46a–2(10)(b) (1989). A policy thus more restrictive than the rule promulgated under section 53A–12–103, abrogates the legislature's objective in ensuring "that no student is denied the opportunity to participate because of an inability to pay the required fee[s]." Utah Code Ann. § 53A–12–103 (1989). When such administrative regulations and policies "conflict with the design of an Act," we have a duty to invalidate them. *Crowther*, 762 P.2d at 1122 (quoting *Travelers Indem. Co. v. Barnes*, 191 Colo. 278, 552 P.2d 300, 303 (1976)).

■ In this case, the trial court concluded that "[t]he fee waiver policy as implemented by Granite School District meets the requirements of the law and of the statutory authority for determination of a student's inability to pay the fees appropriately assessed." However, the District's policy limits the waiver of fees to those families receiving public assistance. This is clearly more restrictive than the Board's regulation waiving fees for students whose families do not receive public assistance but are still unable to pay.

The District's practice in granting partial fee waivers is also contrary to the Board's rules. Those rules define "waiver" as, "[r]elease from the requirement of payment of a fee and from any provision in

lieu of fee payment." Utah Admin.Code R. 300–407–1F (1987–88). We believe this language is capable of but one interpretation—a student is either eligible for a fee waiver or not. No provision is made for the reduction of fee payments or for the imposition of partial fees.

We conclude that the policy issued by the District on July 16, 1986, was more restrictive than the Board's rules on fee waivers it was designed to implement. Since the resulting policy conflicts with the statutory objective of ensuring student participation by all those unable to pay, we invalidate the District's policy.

In view of our holding, we need not reach plaintiff's due process claim. *See Hoyle v. Monson*, 606 P.2d 240, 242 (Utah 1980) (constitutional questions are not to be addressed where the merits can be determined on other grounds).[4]

### ATTORNEY FEES

■ In her appeal, plaintiff claims attorney fees under the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (1981). This federal provision permits an award of attorney fees to the prevailing party in any proceeding brought under 42 U.S.C.A. § 1983 and other sections of the civil rights title. *Id.* Although such claims are not limited to cases pursued in federal courts, a party must plead a federal civil rights claim to qualify for an award of attorney fees. *See Application of Robison*, 107 Idaho 1055, 695 P.2d 440, 442 (Ct.App.1985).

Whether plaintiff's complaint states a claim for relief under section 1983 is a question of law. *Brule v. Southworth*, 611 F.2d 406, 409 (1st Cir.1979) (citing *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946)). "To state a claim for

---

**4.** Plaintiff also alleges that the District promulgated an unannounced fee waiver "policy" and takes issue with this secret policy on due process and equal protection grounds. The record is unclear whether the District had officially adopted such a policy, although there is testimony from the fee administrator that he had drafted a policy less restrictive than the announced policy, but still more restrictive than that of the Board. We merely note that any policy that conflicts with the rules remains invalid, and that all local school board "rules and policies" must be "in writing, filed, and referenced for public access." Utah Code Ann. § 53A–3–402(14) (1989); *see also Athay v. Department of Business Regulation*, 626 P.2d 965, 968 (Utah 1981) (failure to publish guidelines constituted arbitrary action in violation of due process).

relief under section 1983, a complainant need allege only (1) that some person deprived complainant of a right, privilege or immunity secured by the federal constitution; and (2) that such person acted under color of state law." *International Soc'y for Krishna Consciousness, Inc. v. Colorado State Fair,* 673 P.2d 368, 373 (Colo. 1983) (en banc) (citing *Gomez v. Toledo,* 446 U.S. 635, 100 S.Ct. 1920, 64 L.Ed.2d 572 (1980)).

Plaintiff, in the second cause of action of her complaint, alleged that the District had denied her due process and equal protection of the laws as provided for under the fourteenth amendment to the federal constitution and article I, section 7 of the Utah Constitution. She specifically complained that the procedure utilized by the District for fee waivers denied her a timely and fair initial hearing and appeal on her request for a fee waiver. At the trial below and likewise on appeal, plaintiff's constitutional claims were further developed. Plaintiff argues that the fee waiver policy of the District not only violated controlling Utah law and regulations, but also that, as implemented, it violated the due process clause of the fourteenth amendment. Plaintiff complains that the District's unwritten waiver policy, the lack of any formal appeal procedures, and the Board's long delay in finally dealing with her claims violated her constitutional rights. We conclude plaintiff has stated a constitutional claim for relief under section 1983.

In our decision today, we invalidate the District's policy because we find that it conflicts with state law. As a result, we do not reach plaintiff's constitutional claims. However, it does not automatically follow that plaintiff cannot recover her attorney fees under section 1988.

■ The United States Supreme Court has consistently held that a plaintiff is generally entitled to an award of attorney fees under section 1988 if the plaintiff prevails on a statutory, non-civil-rights claim which is pendent to a substantial constitutional claim and which arises from a "common nucleus of operative fact." *Smith v. Robinson,* 468 U.S. 992, 1005, 104 S.Ct. 3457, 3464, 82 L.Ed.2d 746 (1984); *Maher v. Gagne,* 448 U.S. 122, 133 n. 15, 100 S.Ct. 2570, 2575–76 n. 15, 65 L.Ed.2d 653 (1980). *See also* S. Steinglass, *Section 1983 Litigation in State Courts* § 23.2(a) (1988) (footnotes omitted).[5]

In *Maher,* the plaintiff alleged that Connecticut's Aid to Families with Dependent Children regulations violated the Social Security Act and the equal protection and due process clauses of the fourteenth amendment. Plaintiff prevailed in a consent decree on her statutory claim. The Supreme Court nevertheless upheld the district court's award of her counsel fees pursuant to the Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C.A. § 1988 (1981). *Maher,* 448 U.S. at 133, 100 S.Ct. at 2576–77. The Court approved the "award of fees in a case in which the plaintiff prevails on a wholly statutory, non-civil-rights claim pendent to a substantial constitutional claim." *Id.* at 132, 100 S.Ct. at 2576. The Court explained that "[s]uch a fee award 'furthers the Congressional goal of encouraging suits to vindicate constitutional rights without undermining the longstanding judicial policy of avoiding unnecessary decision of important constitutional issues.'" *Id.* at 135, 100 S.Ct. at 2577 (quoting *Gagne v. Maher,* 594 F.2d 336, 342 (2d Cir.1979)).

Again in *Smith,* the Court considered the award of attorney fees under section 1988 where the plaintiff had prevailed on a pendent statutory claim. Although the Court denied attorney fees, it did so on the nar-

---

**5.** The author states,

In authorizing fee awards to parties who prevail on non-fee claims, Congress wanted courts to award fees to prevailing plaintiffs without being forced to reach constitutional issues. Such avoidance of unnecessary constitutional question is a traditional principle that has long guided federal courts in constitutional litigation.

To permit courts to award fees without reaching constitutional issues, Congress borrowed the test it had developed for the exercise of pendent jurisdiction. Under this test, courts may award fees to parties who prevail on nonconstitutional fee claims but only when the fee and non-fee claims arise out of a common nucleus of operative fact.

S. Steinglass, *Section 1983 Litigation in State Courts* § 23.2(a) (1988).

row ground that Congress intended the statute involved, the Education of the Handicapped Act, "to be the exclusive avenue through which a plaintiff may assert an equal protection claim to a publicly financed special education." 468 U.S. at 1009, 104 S.Ct. at 3467. The Court concluded that since the E.H.A. did not provide for attorney fees, Congress did not intend fees be provided under section 1988 in the area of litigation over special education. *Id.* at 1013, 104 S.Ct. at 3469. The Court's conclusion was based on the expansive and pre-emptive nature of the Act. *Id.* at 1010–11, 104 S.Ct. at 3467–71.[6] The Court, however, acknowledged that a prevailing party should ordinarily be awarded attorney fees under section 1988 and that "Congress did not intend to have that authority extinguished by the fact that the case was settled or resolved on a nonconstitutional ground." *Id.* at 1006, 104 S.Ct. at 3465.

The Oregon Court of Appeals recently considered the precise issue before us in *Lofft v. State Bd. of Higher Educ.*, 89 Or.App. 614, 750 P.2d 515 (1988). In *Lofft*, the plaintiff brought a state law tort and federal civil rights action claiming he was wrongfully terminated from his employment. The trial court awarded back pay under an employment contract theory, but denied attorney fees apparently because the decision was based on the state law claim. The Oregon Court of Appeals reversed on the attorney fees issue. The court determined that the plaintiff was the prevailing party on his state law claim, *id.* 750 P.2d at 517, that the plaintiff had alleged a substantial fourteenth amendment due process claim, *id.*, that the state and federal constitutional claims were based on the same core of operative facts, *id.*, and that there were no special circumstances that made the awarding of attorney fees unjust in light of the policy of ordinarily awarding fees to prevailing plaintiffs under section 1983, *id.* at 518. The court states: "if fee awards were available only when a court had passed favorably on a party's section 1983 claim, the Congressional policy of encouraging private enforcement of civil rights would contradict the judicial policy of avoiding decision on constitutional claims." *Id.* at 517.

■ As was the *Lofft* court, we are persuaded that plaintiff has asserted a substantial due process claim which, because of our narrow decision on state statutory grounds, we did not address. We further find her state statutory and constitutional claims arose out of a common nucleus of operative fact. Finally, we conclude there is no special circumstance which would mandate a denial of fees in this case. We therefore remand for the determination of a reasonable attorney fee.

## CONCLUSION

We reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.

GREENWOOD, J., concurs.

BENCH, Judge (concurring and dissenting):

I concur fully with the conclusion that the District's policy is invalid under state law. I dissent, however, from the decision to award plaintiff her attorney fees pursuant to 42 U.S.C.A. § 1988 (1981). I believe our original opinion, reported at 124 Utah Adv.Rep. 37 (Ct.App.1989), correctly disposed of this case. I therefore voted to deny rehearing, and take this opportunity to explain why.

As pointed out by the majority, attorney fees are recoverable in cases like this only when the winning state claim is "pendent to a substantial constitutional claim." *Maher v. Gagne*, 448 U.S. 122, 132, 100 S.Ct. 2570, 2576, 65 L.Ed.2d 653 (1980). Unlike my colleagues, I do not believe plaintiff's state claim is pendent to a substantial claim under the federal constitution.

---

6. Congress reacted to the decision in *Smith* "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as a judicial misinterpretation of its intent." *Fontenot v. Louisiana Bd. of Elementary & Secondary Educ.*, 805 F.2d 1222, 1223 (5th Cir.1986). Congress amended the E.H.A. to include the awarding of attorney fees and made the amendment retroactive to the day before the Court announced its decision in *Smith. See* Handicapped Children's Protection Act of 1986, Pub.L. No. 99–372, 100 Stat. 796 (codified in scattered sections at 20 U.S.C.A. § 1400) (1982 & Supp.1988).

Plaintiff alleged in this case that the imposition of student fees on those not receiving public assistance, but still unable to pay, infringed on her children's right to a free education. However, this is not a right, privilege, or immunity secured by the federal constitution. *See Plyler v. Doe,* 457 U.S. 202, 220–21, 102 S.Ct. 2382, 2396–97, 72 L.Ed.2d 786 (1982) ("Public education is not a 'right' granted to individuals by the Constitution.") (citing *San Antonio Indep. School Dist. v. Rodrigues,* 411 U.S. 1, 34, 93 S.Ct. 1278, 1297, 36 L.Ed.2d 16 (1973)), *reh'g denied,* 458 U.S. 1131, 103 S.Ct. 14, 73 L.Ed.2d 1401 (1982). The only reference in plaintiff's complaint to the federal constitution is in her second cause of action and in paragraph 2 of her prayer for relief. There, plaintiff alleged that her due process rights were violated by defendants' delay in conducting an appeal hearing on her request for fee waivers. I doubt that this pleading constitutes a viable claim under section 1983.[1] It certainly is not a "substantial" claim under the federal constitution, especially in view of the fact that plaintiff had her appeal hearing four months after the District's decision awarding her a partial waiver.[2]

Furthermore, to receive her fees under section 1988, plaintiff's state claim must be "pendent" to a substantial federal claim. Plaintiff prevailed in this case because the District's policy is more restrictive than the Board's rules. That is a question of law that suggests nothing about the underlying procedural facts. As recently stated by the United States Supreme Court:

> Where the plaintiff's claims are based on different facts and legal theories, and the plaintiff has prevailed on only some of those claims, ... "[t]he congressional intent to limit [fee] awards to prevailing parties requires that these unrelated claims be treated as if they had been

raised in separate lawsuits, and therefore no fees may be awarded for services on the unsuccessful claim."

*Texas State Teachers Ass'n v. Garland Indep. School Dist.,* — U.S. ——, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989) (quoting *Hensley v. Eckerhart,* 461 U.S. 424, 435, 103 S.Ct. 1933, 1940, 76 L.Ed.2d 40 (1983)). *See also Smith v. Robinson,* 468 U.S. 992, 1015, 104 S.Ct. 3457, 3470, 82 L.Ed.2d 746 (1984).

Plaintiff has failed to state a claim that will support an award of attorney fees under section 1988. In the absence of another applicable statute or agreement, plaintiff is not entitled to her attorney fees.

---

1. *Accord Call v. City of West Jordan,* 788 P.2d 1049, 1052–1053 (Utah Ct.App.1990). To treat such a claim as viable will encourage the routine insertion of a generic, procedural due process claim in every suit where state action is alleged. Parties will thereby be able to circumvent the principle that attorney fees are not recoverable absent an explicit contractual or statutory provision. *See Cobabe v. Crawford,* 780 P.2d 834, 836 (Utah Ct.App.1989).

2. The main opinion's reliance on other possible due process arguments is misplaced since plaintiff did not include such allegations in her complaint.